



## OFFICE OF THE ATTORNEY GENERAL OF TEXAS

### AUSTIN

GERALD C. MANN
ATTORNEY GENERAL

Honorable George H. Sheppard
Comptroller of Public Accounts
Austin, Texas

Dear Sir:

Opinion No. O-913
Re: Rural Electric Associations
organized under Article 1528b
are subject to ad valorem taxes;
but they are not liable for the
gross receipts taxes levied
under the terms of Article 7060.

This is in answer to your inquiry as to (a) whether or not a Rural Electric Association (R. E. A.) organized under the "Electric Cooperative Corporation Act" is liable for ad valorem taxes on its property, and (2) whether or not such an association is liable for the gross receipts tax levied against such concerns in certain instances under Article 7060, R. C. S.

The "Electric Cooperative Corporation Act" became a law as House Bill No. 599, Chapter 86, 45th Legislature, in 1937, and it is codified as Article 1528b in Vernon's Annotated Revised Civil Statutes. The Act authorizes the creation of non-profit private corporations by three or more persons for the purpose of furnishing electricity and installing electrical and plumbing equipment in rural areas. That part of the act which we deem material in this discussion reads as follows:

"Sec. 3. Cooperative, non-profit, membership corporations may be organized under this Act for the purpose of engaging in rural electrification by any one or more of the following methods:

NO COMMUNICATION IS TO BE CONSTRUED AS A DEPARTMENTAL OPINION UNLESS APPROVED BY THE ATTORNEY GENERAL OR FIRST ASSISTANT

(1)  The furnishing of electric energy to persons in rural areas who are not receiving central station service;

(2)  Assisting in the wiring of the premises of persons in rural areas or the acquisition, supply, or installation of electrical or plumbing equipment therein;

(3)  The furnishing of electric energy, wiring facilities, electrical or plumbing equipment, or services to any other corporations organized under this Act or to the members thereof.

"Sec. 4.  Each corporation shall have power:

(1) To sue and be sued, complain and defend, in its corporate name;

(2)  To have perpetual succession unless a limited period of duration is stated in its articles of incorporation;

(3)  To adopt a corporate seal which may be altered at pleasure, and to use it, or a facsimile thereof, as required by law;

(4)  To generate, manufacture, purchase, acquire, and accumulate electric energy and to transmit, distribute, sell, furnish, and dispose of such electric energy to its members only, and to construct, erect, purchase, lease as lessee and in any manner acquire, own, hold, maintain, operate, sell, dispose of, lease as lessor, exchange, and mortgage plants, buildings, works, machinery, supplies, equipment, apparatus, and transmission and distribution lines or systems necessary, convenient, or useful;

(5)  To assist its members only to wire their premises and install therein electrical and plumbing fixtures, machinery, supplies, apparatus, and equipment of any and all kinds and character, and in connection therewith and for such purposes, to purchase, acquire, lease, sell, distribute, install, and repair electrical and plumbing fixtures, machinery, supplies, appara-

tus, and equipment of any and all kinds and character and to receive, acquire, endorse, pledge, hypothecate, and dispose of notes, bonds, and other evidences of indebtedness;

(6) To furnish to other corporations organized under this Act, or to the members thereof, electric energy, wiring facilities, electrical and plumbing equipment, and services convenient or useful;

(7) To acquire, own, hold, use, exercise, and, to the extent permitted by law, to sell, mortgage, pledge, hypothecate, and in any manner dispose of franchises, rights, privileges, licenses, rights of way, and easements necessary, useful, or appropriate;

(8) To purchase, receive, lease as lessee, or in any other manner acquire, own, hold, maintain, sell, exchange, and use any and all real and personal property or any interest therein;

(9) To borrow money and otherwise contract indebtedness, to issue its obligations therefor, and to secure the payment thereof by mortgage, pledge, or deed of trust of all or any of its property, assets, franchises, revenues, or income;

(10) To sell and convey, mortgage, pledge, lease as lessor, and otherwise dispose of all or any part of its property and assets;

(11) To have and exercise the power of eminent domain for the purpose and in the manner provided by the condemnation laws of this State for acquiring private property for public use, such right to be paramount except as to property of the State, or of any political subdivision thereof;

(12) To accept gifts or grants of money, services, or property, real or personal;

(13) To make any and all contracts necessary or convenient for the exercise of the powers granted in this Act;

(14) To fix, regulate, and collect rates, fees, rents, or other charges for electric energy and any other facilities, supplies, equipment, or services furnished by the corporation;

(15) To conduct its business, and have offices within or without this State;

(16) To elect or appoint officers, agents, and employees of the corporation, and to define their duties and fix their compensation;

(17) To make and alter by-laws, not inconsistent with the articles of incorporation or with the laws of this State for the administration and regulation of the affairs of the corporation;

(18) To do and perform, either for itself or its members, or for any other corporation organized under this Act, or for the members thereof, any and all acts and things, and to have and exercise any and all powers as may be necessary, convenient, or appropriate to effectuate the purpose for which the corporation is organized.

"Sec. 6. (a) The articles of incorporation shall state:

(1) The name of the corporation, which name shall include the words, 'Electric Cooperative' and the word 'Corporation,' 'Incorporated,' 'Inc.,' 'Association,' or 'Company' and the name shall be such as to distinguish it from any other corporation organized and existing under the laws of this State;

(2) The purpose for which the corporation is formed;



Hon. Geo. H. Sheppard, Page 5

"Sec. 25. (a) Each corporation shall be operated without profit to its members but the rates, fees, rents, or other charges for electric energy and any other facilities, supplies, equipment, or services furnished by the corporation shall be sufficient at all times.

(1) To pay all operating and maintenance expenses necessary or desirable for the prudent conduct of its business and the principal of and interest on the obligations issued or assumed by the corporation in the performance of the purpose for which it was organized, and

(2) For the creation of reserves.

(b) The revenues of the corporation shall be devoted first to the payment of operating and maintenance expenses and the principal and interest on outstanding obligations, and thereafter to such reserves for improvement, new construction, depreciation, and contingencies as the Board may from time to time prescribe.

(c) Revenues not required for the purposes set forth in Sub-section (b) of this Section shall be returned from time to time to the members on a pro rata basis according to the amount of business done with each during the period, either in cash, in abatement of current charges for electric energy, or otherwise as the Board determines; but such return may be made by way of general rate reduction to members, if the Board so elects.

"Sec. 30. Corporations formed hereunder shall pay annually, on or before May first, to the Secretary of State, a license fee of Ten Dollars ($10) and such corporations shall be exempt from all other excise taxes of whatsoever kind or nature.

"Sec. 31. Whenever any corporation organized under this Act shall have borrowed money from any Federal agency, the obligations issued to secure the payment of such money shall be exempt from the provisions of the Texas Securities Act, (Chapter 100, Acts of the Forty-fourth Legislature, Regular



Session), or any Acts amendatory thereof, nor
shall the provisions of said Act apply to the
issuance of membership certificates.

"Sec. 35. If any provision of this Act, or
the application of such provision to any person
or circumstance is held invalid, the remainder of
the Act and the application of such provisions to
other persons or circumstances shall not be af-
fected thereby."

We will first discuss your inquiry as to whether
or not a corporation organized under this law is liable for
ad valorem taxes on its property. We call your attention to
the fact that we have already answered this question in our
Opinion Number O-587, dated April 19, 1939, addressed to
Honorable John C. Marburger, County Attorney of Fayette
County, in which we held that corporations of this kind,
organized under this law, are subject to ad valorem taxes.

In our previous opinion, on April 19, 1939, we
discussed this question very exhaustively; and we firmly be-
lieve that the reasons and conclusions given in that opinion
are correct. We will not go into as much detail on this
question in this opinion as we did in our former opinion.

"The power of the State to impose taxes is an in-
herent governmental power, not dependent on nor derived from
either the Federal or State Constitution. These Constitutions
impose restrictions, but are not the source of the State's
taxing power, which is an attribute of sovereignty." 40 Tex.
Jur. 20. See also Ex parte Townsend, 64 Tex. Crim. Rep. 350,
144 S. W. 628, and Stratton v. Commissioners' Court of Kinney
County, (Tex. Civ. App.) 137 S. W. 1170 (writ of error re-
fused). There are no provisions in the Texas Constitution
that could be construed as exempting, or authorizing the ex-
emption of, property of the kind in question from ad valorem
taxation; but, on the other hand the Constitution, in our
opinion prohibits such an exemption. The provisions of the
Texas Constitution bearing on this particular question are
as follows:

Article VIII, Section 1. "Taxation shall
be equal and uniform. All property in this State,
whether owned by natural persons or corporations,
other than municipal, shall be taxed in proportion
to its value, which shall be ascertained as may be



provided by law. The Legislature may impose
a poll tax. It may also impose occupation
taxes, both upon natural persons and upon
corporations, other than municipal, doing any
business in this State. It may also tax in-
comes of both natural persons and corporations
other than municipal, except that persons en-
gaged in mechanical and agricultural pursuits
shall never be required to pay an occupation
tax; Provided, that two hundred and fifty dol-
lars worth of household and kitchen furniture,
belonging to each family in this State shall
be exempt from taxation, and provided further
that the occupation tax levied by any county,
city or town for any year on persons or cor-
porations pursuing any profession or business,
shall not exceed one half of the tax levied by
the State for the same period on such profession
or business."

Article VIII, Section 2. "All occupation
taxes shall be equal and uniform upon the same
class of subjects within the limits of the auth-
ority levying the tax; but the Legislature may,
by general laws, exempt from taxation public
property used for public purposes; actual places
of religious worship; places of burial not held
for private or corporate profit; all buildings
used exclusively and owned by persons or asso-
ciations of persons for school purposes and the
necessary furniture of all schools, also the en-
dowment funds of such institutions of learning
and religion not used with a view to profit and
when the same are invested in bonds or mortgages,
or in land or other property which has been and
shall hereafter be bought in by such institutions
under foreclosure sales made to satisfy or pro-
tect such bonds or mortgages; that such exemption
of such land and property shall continue only for
two years after the purchase of the same at such
sale by such institutions and no longer, and in-
stitutions of purely public charity; and all laws
exempting property from taxation other than the
property above mentioned shall be null and void."

Article XI, Section 9. "The property of
counties, cities and towns, owned and held only
for public purposes, such as public buildings and



Hon. Geo. H. Sheppard, Page 8

ture thereof, and all property used, or intended
for extinguishing fires, public grounds and all
other property devoted exclusively to the use
and benefit of the public shall be exempt from
forced sale and from taxation, provided, nothing
herein shall prevent the enforcement of the ven-
dors lien, the mechanics or builders lien, or
other liens now existing."

The property in question is clearly not within any of the
classes that the legislature is permitted to exempt from
taxation. We have found no statute that attempts to exempt
this property from ad valorem taxation; and we believe the
passage of such a statute is prohibited by the last phrase
in Article VIII, Section 2, of the Constitution, which says
that "all laws exempting property from taxation other than
the property above mentioned shall be null and void."

We will now discuss your second question, which
is, whether or not a corporation organized under this law
is liable for the gross receipts tax levied against such
concerns in certain instances under Article 7060, R.C.S.

The part of Article 7060 that is material to this
discussion reads as follows:

"Each individual, company, corporation or
association, owning, operating or managing or
controlling any gas, electric light, electric
power or water works, or water and light plant,
located within any incorporated town or city
in this State, and used for local sale and distri-
bution in said town or city, and charging for such
gas, electric lights, electric power or water,
shall make quarterly, on the first days of January,
April, July and October of each year, a report to
the Comptroller under oath of the individual or
of the president, treasurer or superintendent of
such company, corporation or association showing
the gross amount received from such business done
in each such incorporated city or town within this
State in the payment of charges for such gas,
electric lights, electric power or water for the
quarter next preceding. Said individual, company,
corporation or association, at the time of making
said report for any such incorporated town or

Hon. Geo. H. Sheppard, Page 9

city of twenty-five hundred (2500) inhabitants
and less than ten thousand (10,000) inhabitants,
according to the last United States Census next
preceding the filing of said report, shall pay
to the Treasurer of this State an occupation tax
for the quarter beginning on said date equal to
seven-tenths of one per cent (0.7 of 1%) of said
gross receipts, as shown by said report; and for
any incorporated town or city of ten thousand
(10,000) inhabitants or more, according to the
last United States Census next preceding the
filing of said report, the said individual com-
pany, corporation or association, at the time of
making said report, shall pay to the Treasurer
of this State an occupation tax for the quarter
beginning on said date an amount equal to one and
three-eights per cent (1 3/8%) of said gross re-
ceipts, as shown by said report. Nothing herein
shall apply to any such gas, electric light,
power or water works or water and light plant
within this State owned and operated by any city
or town, nor to any County or Water Improvement
or Conservation District."

That article was passed in its present form by the 44th Legis-
lature at its 3rd called session in 1936.

We must now consider Section 30 of the "Electric
Cooperative Corporation Act" (Art. 1528b V.A.R.C.S), quoted
above, which provides that "such corporations shall be exempt
from all other excise taxes of whatsoever kind or nature."
The "Electric Cooperative Corporation Act" permits the organ-
izing of corporations to furnish electricity to persons in
"rural areas", and Article 7060 requires the payment of gross
receipts taxes by corporations and persons operating electric
plants in incorporated cities and towns. It may be that con-
cerns organized under the Electric Cooperative Corporation Act
by virtue of being limited to "rural areas" could not operate
in incorporated towns, and that there could not be a concern
so situated that both the Electric Cooperative Corporation Act
and Article 7060 would apply to it; but we do not intend to go
into that question in this opinion, because we assume by vir-



tue of you asking this particular question that you have in mind a Rural Electric Association that comes within the terms of Article 7060. If Section 30 of the "Electric Cooperative Corporation Act" is valid it creates an exception to Article 7060, and would control in the situation you ask about.

As we view it, said Section 30 is a valid law, and it creates an exception to Article 7060. Under its terms all Rural Electric Associations organized under the "Electric Co-operative Corporation Act" are exempt from excise taxes.

The gross receipts tax provided in Article 7060 is a form of excise tax. In the case of Foster & Creighton Company v. Graham, 154 Tenn. 412, 285 S. W. 570, 47 A. L. R. 971, the court said:

> "All taxes, other than polls, are either direct or indirect. A direct tax is one that is imposed directly on property according to its value. It is generally spoken of as a property tax, or an ad valorem tax. An indirect tax is a tax upon some right or privilege, and it is also called an excise or occupation tax."

It has been suggested that said Section 30 creates an exemption that is arbitrary and unreasonable and that it violates the constitutional provisions on uniform taxation and equal protection of the laws; but we do not agree with that contention. The "Electric Cooperative Corporation Act" is designed to create concerns of a distinct type, and that are engaged in a business different from other concerns. Not only are they different from concerns selling other commodities, but they are different from the usual concern selling electricity. In the first place they are non-profit organizations, and the others are in business for a profit; and in the second place they limit their activities to "rural areas", and the others do business in cities and towns. As we understand it 'occupations may be classified for the purpose of taxation, * * * provided the classification is reasonable.* * * So persons of the same class may be sub-divided according to certain differences, provided the sub-classification is reasonable, and the tax graduated accordingly, or one or more sub-classes may be exempted." 1 Cooley on Taxation, 4th Ed., 746.

In view of what the appellate courts have said
we are convinced that said Section 30 in question is valid.
In the case of Citizens Telephone Co. v. Fuller, 229 U. S.
322, 57 L. Ed. 1206, 33 Sup. Ct. 833, the constitutionality
of the Michigan law taxing telephone companies was upheld,
and in that case the Supreme Court of the United States said:

"The act contained this proviso: 'Provided,
That the property of telegraph and telephone com-
panies whose gross receipts within this State for
the year ending June thirty do not exceed five
hundred dollars shall be exempt from taxation.'

"The contention of appellant that the act
offends the equal protection clause of the Consti-
tution is based on that proviso. It is urged
that the proviso makes an unjust discrimination
between companies doing the same business by the
same means and imposes a tax * * * because the
business of one is large and the other small.* * *

"The District Court, however, took a broader
view and considered the inducement of the legisla-
tion and its administrative possibilities as giv-
ing character to its classification. The court
also considered the character of the taxed and
non-taxed lines, their number and comparative
value and the amount of taxes which would be as-
sessed against them. * * *

"The Lines may be divided into two classes,
(1) lines owned by appellant and conducted for
profit, and (2) lines connected with those of
the first class and called sub-licensed companies,
rural and roadway. * * *

"The 'rural' usually belongs to an associa-
tion of farmers who live along the line. It com-
prises a switch-board leased by the main or profit-
making company to a rural manager, the main company
owning the telephones on the line and receiving the
entire charge for toll messages, less the manager's
commissions for collection. The roadways connected

with a 'rural' are constructed and owned by
the farmers in the same way as other roadways.
The larger portion of 'rurals' are contracts
with individuals." * *

"The profit that is derived from the rural
and roadway lines is in the reduced rate for
the telephones. The manager gets the difference
between what he pays the main company and what
he gets from those to whom he rents.

"The difference, therefore, between the tax-
paying and non-tax-paying companies, or indivi-
duals is that the former, as said by the District
Court, belong to commercial corporations or en-
terprises, organized and conducted for the pur-
pose of earning and paying profits as or in the
nature of dividends; the latter, the untaxed, are
cooperative or farmers' mutual associations,
usually unincorporated, conducted at estimated
costs and organized primarily to get for the
association cheap telephone service.

"It is manifest, therefore, that there are
marked differences between the taxed and non-
taxed companies, and the differences might be
pronounced arbitrary if the rule urged by appel-
lant should be applied, that is, that in the
taxation of property no circumstance should be
considered but its value, or, to use appellant's
words, 'each dollar's worth should be treated
alike.' But such rigid equality has not been
enforced. In Michigan the legislature has the
power of prescribing the subjects of taxation
and exemption, notwithstanding the constitution
of the State requires the legislature to provide
a uniform rule of taxation, * * *

"We think the statute under review is within
the rule. It is not arbitrary. It has a reason-
able basis, resting on a real distinction. It is
not a distinction based on mere size only, as con-
tended by appellant, nor upon the mere amount of

business done. There is a difference in the
doing of the business and its results; a dif-
ference in the relation to the public."

The constitutionality of Article 7060 as origin-
ally passed, prior to its amendment in 1936, was attacked
on the ground of discrimination in the case of Dallas Gas
Co. v. State, (Ct. Civ. App.) 261 S. W. 1063 (writ of error
refused), and we think the language of Justice Baugh in
upholding the statute in that case is applicable to the
question in this opinion, that language being as follows:

"Appellant insists that because the act
in question levies an occupation tax at one
rate on those pursuing an occupation in cities
of over 25,000 inhabitants, an occupation tax
at a lesser rate upon those pursuing the same
occupation in cities of 10,000 inhabitants and
less than 25,000 inhabitants, and no occupation
tax at all on those pursuing that same occupa-
tion in places other than these two classes of
cities, it is void, and in violation of section
3 of article 1 and sections 1 and 2 of article
8 of the Constitution of Texas and of the Four-
teenth Amendment to the Constitution of the
United States.* * *

"In small towns such cost is so out of
proportion to the returns from such occupation
as to make it impracticable, if not economically
impossible, to pursue it there. The very exist-
ence of such occupation must needs depend upon
volume of business, which, generally, is in pro-
portion to the number of inhabitants served.
Usually the larger the volume of business done
the more economically such occupation can be
pursued and the more profitable it thus becomes.
All these considerations necessarily enter into
the matter of classification and could have been,
and doubtless were, considered by the Legislature
in arriving at the classification of which appel-
lant complains. The Legislature may have con-
cluded, and perhaps did, that due to its very
nature the operation of a gas plant in any place

of less than 10,000 inhabitants was so unprofitable as to be economically impracticable, or so nearly so that an occupation tax upon it would render it so. And as stated in Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. 337, 55 L. Ed. 369, Ann. Cas. 1912C, 160:

"'When the classification in such a law is called in question, if any state of facts reasonably can be conceived that would sustain it, the existence of that state of facts at the time the law was enacted must be assumed.'

"In view of the peculiar nature of the occupation involved and our duty to uphold the acts of the Legislature unless same are clearly in violation of the state or national Constitution, we are not prepared to say that the classification of appellant's occupation is so arbitrary, discriminatory, unreasonable, or unreal as to warrant us in holding it unconstitutional for that reason."

The last case we wish to quote from is the case of Texas Company v. Stephens, 100 Tex. 628, 103 S. W. 481, which upheld the constitutionality of a gross receipts tax law that placed a different rate of taxes on different types of business, and in that case the Supreme Court of Texas said:

"The very language of the Constitution of the State implies power in the Legislature to classify the subjects of occupation taxes and only requires that the tax shall be equal and uniform upon the same class. Persons who, in the most general sense, may be regarded as pursuing the same occupation, as for instance merchants, may thus be divided into classes and the classes may be taxed in different amounts and according to different standards. Merchants may be divided into wholesalers and retailers, and, if there be reasonable grounds, these may be further divided according to the particular classes of business in which they may engage. The considerations upon which such classifications shall be

Hon. Geo. H. Sheppard, Page 15

based are primarily within the discretion of
the Legislature. The courts, under the provisions
relied on, can only interfere when it is made
clearly to appear that an attempted classification
has no reasonable basis in the nature of the busi-
nesses classified, and that the law operates un-
equally upon subjects between which there is no
real difference to justify the separate treatment
of them undertaken by the Legislature. This is
the rule in applying both the State and Federal
Constitutions, and it has been so often stated as
to render unnecessary further discussion of it."

Our answer to your first question is that Rural Elec-
tric Associations organized under the "Electric Cooperative
Corporation Act" (Art. 1528b) are liable for ad valorem taxes
on their property.

Our answer to your second question is that by virtue
of Section 30 of the "Electric Cooperative Corporation Act"
(Art. 1528b) concerns organized under said act are not liable
for the gross receipts tax levied against such concerns under
Article 7060.

Yours very truly

ATTORNEY GENERAL OF TEXAS

By Cecil C. Rotsch

Cecil C. Rotsch
Assistant

APPROVED JUL 17, 1939

CCR:jm

FIRST ASSISTANT
ATTORNEY GENERAL

APPROVED
OPINION
COMMITTEE
BY WR _____
CHAIRMAN